# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# CIVIL ACTION NO. 3:17-CV-00232-RJC-DSC

| | |
|---|---|
| PHYLLIS GASTON, | ) |
| Plaintiff, | ) |
| | ) **MEMORANDUM AND** |
| v. | ) **RECOMMENDATION** |
| | ) |
| ANSON COUNTY SCHOOL DISTRICT, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on "Defendant's Motion to Dismiss Plaintiff's Complaint," Doc. 11, and the parties' associated briefs and exhibits, Docs. 12-15.

This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and this Motion is now ripe for consideration.

Having fully considered the arguments, the record, and the applicable authority, the undersigned respectfully recommends that Defendant's Motion to Dismiss be <u>granted in part and denied in part</u>, as discussed below.

## I. PROCEDURAL AND FACTUAL BACKGROUND

*Pro se* Plaintiff Phyllis Gaston ("Plaintiff") initiated this action with the filing of a "Complaint," Doc. 1, on May 1, 2017.

Accepting the allegations of the Complaint, Doc. 1, as true, in November 2014 Plaintiff was enrolled in the Graduate Teaching Program at the University of North Carolina at Charlotte. Defendant ("the Board") hired Plaintiff as a full-time "lateral entry teacher" for eighth grade English/Language Arts. Doc. 1 at 9-10. She met the eligibility requirements to become a full-time

lateral entry teacher. Plaintiff alleges that the Board interfered with her ability to attain that status and the corresponding salary by intentionally failing to apply for her "Provisional License"; refusing to provide her with a "permanent contract in an attempt to reclassify Plaintiff as a 'substitute' instead of a contracted teacher in order to terminate Plaintiff in retaliation for reporting discrimination"; failing to cooperate with Plaintiff and officials from UNC Charlotte to complete her "Final Progress Check Form"; "reassigning Plaintiff from her full time English/Language Arts class . . . to the computer lab"; and subjecting her to remarks made by Principal Josh McLaurin in a "hostile," "provocative," and "degrading" manner. Id. at 10-13. She was "paid at the rate of a certified substitute [teacher]," while unnamed "white lateral entry teachers with far less experience and education were paid their full salaries." Id. Plaintiff alleges that the Board's failure to ensure that she attained lateral entry teacher status and the corresponding salary amounted to discrimination based upon her race. Id.

When she complained to Human Resources Supervisor Joy Drake about discrimination and the "hostile, provocative" treatment she had experienced, "the Human resources department [began] the process of terminating Plaintiff immediately" thereafter. Id. at 12. Plaintiff's Anson County Schools email account was closed, her building access card was deactivated, and a substitute was scheduled for the Computer Lab class she had been assigned to teach. Id. According to Plaintiff, those actions revealed the Board's attempt "to change Plaintiff's employment status from a full time contracted teacher to a substitute teacher." Id. In May 2015, the Board informed Plaintiff that she had been terminated. Id. at 13. Plaintiff claims that those events amount to a course of discrimination, harassment, and hostile treatment that entitle her to relief under Title VII.

On October 14, 2015, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging discrimination in violation of Title VII of the Civil Rights Act of

1964 based upon her race and for retaliation. Plaintiff asserted that the Board "subjected [her] to different terms and conditions of employment than [her] similarly situated white coworker" when it "paid [her] a lower rate of pay and refused to complete paperwork necessary for [her] provisional licensure." Doc. 6. She also claimed that she had been retaliated against for reporting the discrimination to Human Resources. She received the EEOC Notice of Right to Sue on February 4, 2017. Doc. 1 at 9.

Plaintiff's Complaint alleges thirteen counts of discrimination. Id. at 12. Plaintiff alleges that Defendant discriminated against her based upon race by terminating her employment, demoting her, denying her equal pay and subjecting her to sexual and general harassment. Plaintiff also alleges that Defendant "refused to provide Plaintiff the permanent contract in an attempt to reclassify Plaintiff as a 'substitute' instead of a contracted teacher in order to terminate Plaintiff in retaliation for reporting discrimination." Id. at 10.

Defendant filed this Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure arguing that the Complaint falls short of the minimum pleading requirements for claims of race discrimination, retaliation and hostile work environment under Title VII. The Motion to Dismiss has been briefed and is now ripe for review.

## II. STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 563. A complaint attacked

by a Rule 12(b)(6) motion to dismiss will survive if it contains enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

In Iqbal, the Supreme Court articulated a two-step process for determining whether a complaint meets this plausibility standard. First, the court identifies allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555) (allegation that government officials adopted challenged policy "because of" its adverse effects on protected group was conclusory and not assumed to be true). Although the pleading requirements stated in "Rule 8 [of the Federal Rules of Civil Procedure] mark[] a notable and generous departure from the hyper-technical, code-pleading regime of a prior era ... it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678-79.

Second, to the extent there are well-pleaded factual allegations, the court should assume their truth and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. "Determining whether a complaint contains sufficient facts to state a plausible claim for relief "will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief,'" and therefore should be dismissed. Id. (quoting Fed. R. Civ. P. 8(a)(2)).

The Court is mindful of the latitude extended to the pleadings of *pro se* litigants. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (courts should "[c]onstru[e] [a *pro se*] petitioner's inartful pleading liberally"). However, courts cannot act as the *pro se* plaintiff's advocate or develop claims which the plaintiff failed to raise clearly on the face of her complaint. Gordon v. Leeke, 574 F.2d 1147, 1152 (4th Cir. 1978) (recognizing that district courts are not expected to assume the role of advocate for the pro se plaintiff). See also Brock v. Carroll, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985). As a result, even a *pro se* plaintiff's claim for relief "requires more than labels and conclusions...." Twombly, 550 U.S. at 555. Like plaintiffs who are represented by counsel, a *pro se* plaintiff must still "allege facts sufficient to state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). In light of this authority, conclusory statements with insufficient factual allegations, even when asserted by *pro se* plaintiffs, will not survive a motion to dismiss under Rule 12(b)(6).

### III. DISCUSSION OF CLAIMS

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensations, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin ...." 42 U.S.C § 2000e–2(a)(1).

#### A. Race Discrimination

In McCleary-Evans v. Md. Dep't of Transp., 780 F.3d 582 (4th Cir. 2015), the Fourth Circuit examined the sufficiency of factual allegations needed to withstand a motion to dismiss a Title VII discrimination case in light of Iqbal and Twombly. The Court held that while a plaintiff need not plead a prima facie case of discrimination, she must still state a claim that "is plausible

on its face." McCleary–Evans, 780 F.3d at 585 (quoting Iqbal, 556 U.S. at 678). To state a plausible claim of discrimination, a plaintiff is "required to allege facts to satisfy the elements of a cause of action created by that statute." Id.

In order to plead a Title VII discrimination claim, Plaintiff must allege (1) her membership in a protected class; (2) that she was qualified for her job and met her employer's reasonable expectations; (3) that she suffered an adverse employment action; and (4) that other employees outside the protected class were treated more favorably. Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010).

Plaintiff's Complaint fails to meet the threshold established by Fourth Circuit precedent for a race discrimination claim. Although Plaintiff's Complaint alleges in conclusory manner that she was terminated based upon her race, it does not contain facts establishing the plausibility of that claim. See Coleman, 626 F.3d at 190–91. There are no well pled facts showing that Plaintiff was treated differently than other similarly situated individuals or that race was the basis for her termination. Plaintiff's allegations of discrimination do not rise above speculation.

Plaintiff fails to allege facts showing that she was qualified for the position she sought-a full-time, licensed, certified teacher-or was performing up to the Board's reasonable expectations. She admits that she was a "graduate student" "in the teaching program" and not yet "licensed as a certified teacher." Doc. 1 at 9. Her own allegations belie any suggestion that the Board interfered with her status as "a full time contracted teacher," let alone that it did so for a discriminatory purpose. Id. at 12.

Plaintiff alleges that Principal McLaurin was "familiar" with the Final Progress Check Form and its importance to her lateral entry status "because he had just signed off on one for Angela Bolick, a white female, who was previously a lateral entry teacher in an educational

program." Id. at 11; see also Id. at 12 (asserting that McLaurin "signed off recently on a White female teacher's Final Progress Check Form with no problem, but was giving Plaintiff, a Black female teacher, trouble every step of the way . . . ."). Plaintiff cites an instance where McLaurin "signed off" on a form for a white teacher. However, her Complaint is devoid of facts related to the circumstances surrounding Ms. Bolick's employment, or the status of her teaching degree, license application or job performance. The Court cannot leap to the conclusion that McLaurin signed a form for another teacher "with no problem" because she was white but gave Plaintiff "trouble" based upon her race. Plaintiff's Complaint establishes no more than a "mere possibility" of discriminatory action by the Board. See Autry v. N.C. Dep't of Human Res., 820 F.2d 1384, 1386 (4th Cir. 1987) ("In order to establish a case of race discrimination… Plaintiff would have to be able to show a connection between her race and her failure to be promoted. In other words, she would have to show that she was not promoted because of her race, not that she was a member of the black race and was not promoted.") (emphasis in original); Gray v. Walmart Stores, Inc., No. 7:10-CV-171-BR, 2011 WL 1831780, at *10-11 (E.D.N.C. May 12, 2011) ("[E]ven if plaintiff had suffered an adverse employment action, she fails to allege facts sufficient to support a reasonable inference that [her employer] took such action against her based on her race. . . . [T]he amended complaint is completely devoid of allegations that show that anyone at Walmart possessed any racially-motivated animus or acted on the basis of race in making employment decisions that adversely affected plaintiff.").

Plaintiff's Complaint alleges in conclusory manner that she was terminated based upon her race. See Coleman, 626 F.3d at 190–91. She has not shown that she was treated differently than other similarly situated individuals or that race was the basis for her termination. Accordingly,

Plaintiff has failed to plead a claim for race discrimination and the undersigned respectfully recommends that Defendant's Motion to Dismiss be granted.

### B. Retaliation Claim

To state a prima facie case of retaliation in violation of Title VII, Plaintiff must show: (1) that she engaged in protected activity; (2) that the employer took an adverse action against her; and (3) a causal connection between her protected activity and the adverse action. Coleman, 626 F.3d at 190. "Protected activities fall into two distinct categories: participation or opposition. An employer may not retaliate against an employee participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 259 (4th Cir.1998) (internal citations omitted). Protected activities include "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Id. at 259. Close proximity in time can give "rise to sufficient inference of causation to satisfy the prima facie requirement." King v. Rumsfield, 328 F.3d 145, 151(4th Cir. 2003) (holding that a two month and two week time frame between employer's notice of EEOC complaint and plaintiff's termination satisfied prima facie causation requirement).

Construing Plaintiff's allegations liberally, she alleges that the Board "retaliated" against her "by taking Plaintiff out of the system (deactivated Plaintiff's email and access card for entry)" and "replacing Plaintiff's full time English Language Arts position and the newly assigned Computer Lab position with substitutes," all on the day after she "report[ed] the discrimination, harassment and retaliation" to the Board's Human Resources Manager. Doc. 1 at 12.

Plaintiff's complaints to the Human Resources Department are "protected activity" under Title VII and sufficient to support a prima facie case of retaliation. Therefore, the undersigned respectfully recommends that Defendant's Motion to Dismiss with respect to Plaintiff's Retaliation claim under Title VII be denied.

### C. Hostile Work Environment Claim

In order to state a hostile work environment claim based upon race, Plaintiff must show that: (1) she was harassed "because of" her race; (2) the harassment was unwelcome; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) some basis exists for imputing liability to the employer. Bonds v. Leavitt, 629 F.3d 369, 385 (4th Cir. 2011).

Title VII "does not set forth 'a general civility code for the American workplace.'" Burlington Northern & Santa Fe Railway Co. v. White, 548 U.S. 53, 68 (2006) (internal citations omitted). As the Fourth Circuit has recognized, "plaintiffs must clear a high bar in order to satisfy the severe or pervasive test." EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306, 315 (4th Cir. 2008). It is insufficient to plead facts establishing "callous behavior by [one's] superiors." Id. at 315-16 (quoting Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003)); see Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (the "'mere utterance of an ... epithet which engenders offensive feelings in a employee[ ]' does not sufficiently affect the conditions of employment to implicate Title VII") (quoting Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 67 (1986)) (internal citation omitted).

Plaintiff must plead facts showing that she perceived the harassment to be hostile or abusive, and that the harassment was "sufficiently severe or pervasive" so as to "create[ ] an environment that a reasonable person would find hostile or abusive." Jennings v. Univ. of North

Carolina, 482 F.3d 686, 696 (4th Cir. 2007) (internal quotations omitted); see Harris, 510 U.S. at 21-22 ("if the victim does not subjectively perceive the environment to be abusive, ... there is no Title VII violation"). Thus, the plaintiff must bring forward facts showing both subjective and objective "severe or pervasive" harassment. Ocheltree v. Scollon Prods., Inc., 335 F.3d 325, 333 (4th Cir. 2003) (en banc) (citing Harris, 510 U.S. at 21-22). In determining whether conduct is so severe or pervasive as to be objectively intolerable, a court examines the frequency of the conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance. Fox v. Gen. Motors Corp., 247 F.3d 169, 178 (4th Cir. 2001). A "generalized job grievance is not sufficient to state a claim" for hostile work environment. Gray v. Walmart, No 7:10-cv-171-BR, 2011 WL 4368415, at *7 (E.D.N.C. Sept. 19, 2011).

Plaintiff claims that she was "subjected to a very hostile environment by the principal and had reported numerous incidents of sexual and general harassment prior to the reassignment" of her teaching position in April 2015. Doc. at 11. Plaintiff complains that her primarily white male students drew sexually explicit pictures on two occasions and called her attention to condoms on the floor. One student "mocked" Dr. Martin Luther King's "I Have a Dream" speech in the classroom. On another occasion, she inadvertently placed her hand on a student's crotch as she attempted to prevent him from falling. The student smirked and classmates laughed. Id. at 13-14.

Assuming arguendo that her allegations of student misconduct are sufficiently severe or pervasive to so as to affect the "terms, conditions, or privileges" of her employment, they fail to establish that "some factual basis exists to impute liability for the harassment to [her] employer." Gray, 2011 WL 4368415, at *6 (citing cases). Any alleged deficiencies in the Board's response to

these incidents over the course of a school year fall far short of establishing that Plaintiff was subjected to severe and pervasive "harassment" for which the Board can be held liable.

The incidents cited in Plaintiff's Amended Complaint are not severe or pervasive enough to form the basis for a hostile work environment claim. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Title VII hostile work environment claim be granted.

## IV. **RECOMMENDATION**

FOR THE FOREGOING REASONS, the undersigned respectfully recommends that Defendant's Motion to Dismiss Plaintiff's Complaint, Doc. 3, be GRANTED IN PART AND DENIED IN PART.

## V. **NOTICE OF APPEAL RIGHTS**

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to the *pro se* Plaintiff, counsel for Defendant; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED.**

Signed: August 22, 2017

David S. Cayer
United States Magistrate Judge